**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shannon Argyros as Special Administrator of the Estate of George Argyros, Jr.,<br><br>Plaintiff,<br><br>v.<br><br>Island Storage & Marine LLC, *et al.*,<br><br>Defendants. | No. CV-20-08195-PCT-JJT<br><br>**ORDER** |

At issue is Defendants Island Storage & Marine, LLC; Islander RV Resort, LLC; Rick Holloway; Patrice Holloway; and Ken Komick's Motion to Dismiss (Doc. 25, MTD), to which Plaintiff Shannon Argyros filed a Response, (Doc. 26, Resp.), and Defendants filed a Reply (Doc. 27, Reply).[1] The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Defendants' Motion to Dismiss but will grant Plaintiff leave to amend the Complaint.

**I.    BACKGROUND**

Island Storage & Marine, LLC and Islander RV Resort, LLC (collectively, "Islander Defendants") are Arizona limited liability companies (Compl. ¶¶ 2-3.) The individual Defendants are members or owners of the LLC. (Compl. ¶¶ 4-6.)

---

[1] George Argyros Jr. was the initial Plaintiff but passed away after commencing this action. His wife, Shannon Argyros, succeeded him as Plaintiff in the capacity of Special Administrator of Mr. Argyros's estate. For the remainder of this Order, the Court shall refer to "Plaintiff" when discussing Ms. Argyros in her current role and "Mr. Argyros" when discussing his actions prior to filing the Complaint.

Plaintiff alleges the Islander Defendants own and operate a boat storage facility, private marina, and private boat launch ramp located in Lake Havasu City, Arizona. (Compl. ¶ 13.) The Islander Defendants' facility is unique among such watercraft storage facilities because it can accommodate large watercraft, and offers paid premium services such as the pay-per-use "arrive and drive" service whereby employees will drive the tenant's vehicle and trailer to a parking lot for the day and then drive them back to the ramp when the tenant returns with the boat. (Compl. ¶¶ 13-14.)

Plaintiff became a tenant of Island Storage and unit H1003 in 2008. (Compl. ¶ 17.) Mr. Argyros chose Island Storage and the unit because of the "arrive and drive" service as well as its ability to accommodate larger watercraft. (Compl. ¶¶ 16–18.)

In 2018, Island Storage developed plans to build a new watercraft storage facility with units combining both high-capacity watercraft storage space and residential amenities. (Compl. ¶ 19.) Tenants could customize the interior of the units at their expense. (Compl. ¶ 21.) Prior to building the new facility, Mr. Holloway approached Mr. Argyros to discuss whether he would be interested in leasing the first such combination residential/storage unit. (Compl. ¶ 22.) Plaintiff alleges that the Islander Defendants and Mr. Holloway represented that the new units would be built to accommodate large watercraft and offered Mr. Argyros a prime location if he would lease and, at his sole expense, "build out" such a unit. (Compl. ¶ 24.) Additionally, Mr. Holloway assured Mr. Argyros that he would have ongoing and full use of the Islander Defendants' facility and all its amenities. (Compl. ¶ 27.) The Islander Defendants would then use his unit as a model or "showpiece" to attract other potential tenants. (Compl. ¶ 25.)

In April 2018, Mr. Argyros signed a sixty-month lease with Defendant for Storage Unit MC106 (the "MC106 Lease").[2] Relying on the MC106 Lease and his communications with Defendants, Mr. Argyros spent approximately $250,000 customizing the unit. (Compl. ¶ 29.)

---

[2] Plaintiff fails to identify which Defendant in the Complaint. (Compl. ¶ 29.)

In the latter half of 2019, the Islander Defendants constructed a a restaurant facility adjacent to MC106 and leased it to Boat House Grill. (Compl. ¶ 31.) Over the next three months, Mr. Argyros had multiple confrontations with the restaurant's employees and customers. (Compl. ¶¶ 31–33.)

Shortly thereafter, the Islander Defendants sent Mr. Argyros a 30-day notice to vacate unit H1003 but gave no written reason for the demand. (Compl. ¶ 34, Ex. A.) Mr. Argyros then retained an attorney, and the Islander Defendants sent a second notice to vacate, citing default of rental payments. (Compl. ¶ 35, Ex. B.) After discussions between the parties, the Islander Defendants withdrew their attempt to terminate the rental agreement and paid Mr. Argyros $7,500, at which point he believed the matter was resolved. (Compl. ¶ 36.)

Instead, Plaintiff alleges that the Islander Defendants began to undertake a campaign of retaliatory and harassing tactics. (Compl. ¶ 37.) In or around May 2020, they informed Mr. Argyros that he was no longer entitled to "unfettered use" of the parking lot in front of MC106 to access his watercraft because "Rick [Holloway] doesn't like [Mr. Argyros]." (Compl. ¶ 38.) Subsequently, the Islander Defendants barred Mr. Argyros from parking his vehicles in front of MC106 and instructed employees to stop providing boat launch services to him. (Compl. ¶¶ 39, 41.) The Islander Defendants then designated the entire area around unit MC106 for parking by permit only and refused to provide Mr. Argyros with a permit. (Compl. ¶ 40.) Plaintiff alleges that Islander Defendants understood that these services were material to Plaintiff's decision to help build and lease unit MC106. (Compl. ¶ 41.)

After Mr. Argyros's attorney emailed Island Storage about the ongoing issues, the Boat House Grill, Islander Resort, and Mr. Holloway obtained injunction against harassment orders on Mr. Argyros. (Compl. ¶ 43, Ex. C; MTD, Exs. D–F.)[3]

Finally, on July 10, 2020, and after no adverse contact with Plaintiff, the Islander Defendants sent Plaintiff another notice to vacate unit H1003. (Compl. ¶ 43.)

---

[3] The Court may consider the injunctions at the Motion to Dismiss stage because they are matters of public record. *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (holding that a court may take judicial notice of, and properly consider, matters of public record).

- 3 -

## II. LEGAL STANDARD

When analyzing a complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (quoting *Halkin v. VeriFone Inc. (In re VeriFone Sec. Litig.)*, 11 F.3d 865, 868 (9th Cir. 1993)).

A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. Analysis

To start, the Court must address Plaintiff's failure to attach the M106 Lease and H1003 Lease as exhibits to the Complaint. Plaintiff relies on the M106 Lease for multiple claims and references it throughout the Complaint. Defendants attached it as an exhibit in support of their Motion to Dismiss. (MTD, Ex. B.) Typically courts cannot rely on extrinsic evidence without converting a motion to dismiss into a motion for summary judgment. *Lee*,

250 F.3d at 688; Fed R. Civ. P. 12(d). However, courts "may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). The MC106 Lease meets the first and the third elements. Therefore, the Court will consider the MC106 Lease where it is central to Plaintiff's claim.

The H1003 Lease poses a more complicated question. The H1003 Lease and its addendum provide for Mr. Argyros's boat launch services as well as Defendants' right to revoke or modify the services "at any time for any reason." (MTD, Ex. B at 5.) Defendants attached the H1003 Lease and the addendum as evidence that they legally terminated Mr. Argyros's boat launch services. (MTD at 7, Ex. B.)

The Complaint mentions the H1003 Lease and several of Plaintiff's claims rely in part on the revocation of the boat launch services. However, Plaintiff never discusses the addendum; nor does the Complaint expressly tie the boat launch services to the H1003 Lease. Because the extent to which Plaintiff relies upon the H1003 Lease and addendum for her claims is unclear, the documents are not properly before the Court. The Court will not rely on the H1003 Lease or Addendum when evaluating Defendants' Motion to Dismiss. Likewise, Plaintiff cannot rely on the revocation of Mr. Argyros's boat launch privileges to state a claim.

### A.   Count One: Breach of implied Covenant of Good Faith and Fair Dealing as against Island Storage

Plaintiff alleges that Island Storage breached the covenant of good faith and fair dealing implied in the MC106 Lease by acting to prevent Plaintiff from receiving benefits to which Plaintiff is entitled under the written lease, namely 1) "free ingress and egress" for her watercraft into and out of Unit MC106 and 2) access to Island Resort's boat launch

services. (Compl. ¶¶ 49–50.) Plaintiff's claim regarding boat launch services is not properly before the Court and is thus dismissed.

Under Arizona law, the covenant of good faith and fair dealing is implied in every contract. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28 (Ariz. 2002), *as corrected* (Apr. 9, 2002). This implied covenant "prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Id.* A party can breach this covenant either by acting in a manner that "denies the other party the reasonably expected benefits of the contract" or by using its discretion under the terms of the contract for a reason "beyond the risks assumed by the party claiming a breach." *In re Banner Health Data Breach Litigation*, No. CV-16-02696-PHX-SRB, 2017 WL 6763548, at *5 (D. Ariz. Dec. 20, 2017) (quoting *Coulter v. Grant Thornton, LLP*, 388 P.3d 834, 842 (Ariz. Ct. App. 2017)). An implied covenant claim is not a tool to create new terms of a contract, *Health Industry Business Communications Council Inc. v. Animal Health Institute*, 481 F.Supp.3d 941, 960 (D. Ariz. 2020), and the relevant inquiry into a claim focuses "on the contract itself, to determine what the parties did agree to." *Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz. 1986) (quotation and citation omitted).

Here, the M106 Lease does not provide Plaintiff with the right of "free ingress and egress" for her watercraft. (MTD at 7-8, Ex. C.) Allegations that the Defendant merely "had knowledge" or an "understanding" of Plaintiff's conditions for leasing the new unit are insufficient to state a claim for breach of the implied covenant of good faith and fair dealing. *See Health Industry Business Communications Council Inc*, 481 F.Supp.3d at 960 (dismissing claim for breach of good faith and fair dealing where plaintiff asserted a right not provided by the operative contract).

Therefore, the Court shall dismiss Count 1.

### B. Count Two: Breach of the Implied Covenant of Quiet Enjoyment as Against Island Storage

Arizona law recognizes an implied covenant of quiet enjoyment that protects lessees from landlord interference. *Johansen v. Arizona Hotel*, 291 P. 1005, 1008 (Ariz. 1930). Outside of Arizona, courts have held that pleading of a constructive eviction is required. *See e.g. Winchell v. Schiff*, 193 P.3d 946, 952 (Nev. 2008) While it does not appear that Arizona courts have deemed constructive eviction a requirement, both Plaintiff and Defendants agree that Plaintiff must show one in order to state a claim. (MTD at 9; Resp. at 6.) A constructive eviction requires "intentional conduct by the landlord which renders the lease unavailing to the tenant or deprives him of the beneficial enjoyment of the leased property, causing him to vacate the premises." *Stewart Title & Tr. of Tucson v. Pribbeno*, 628 P.2d 52, 53 (Ariz. Ct. App. 1981)

Plaintiff fails to allege a constructive eviction. She alleges that Defendants breached the covenant of quiet enjoyment guaranteed in the Unit MC106 lease because Defendants obstructed Mr. Argyros's unfettered access to MC106 but does not allege that this caused Mr. Argyros to vacate the premises. (Compl. ¶¶ 54–56.)

Because of these deficiencies, the Court shall dismiss Count 2.

### C. Count Three: Promissory Estoppel as Against Islander Resort

Arizona follows the definition of promissory estoppel set forth in the Restatement (Second) of Contracts, which includes the elements of "[(1) a] promise [(2)] which the promissor should reasonably expect to induce action or forbearance on the part of the promissee . . . and [(3)] which does induce such action or forbearance . . . [and (4) where] injustice can be avoided only by enforcement of the promise.. *Chewning v. Palmer*, 650 P.2d 438, 440 (Ariz. 1982) (quoting Restatement (Second) of Contracts § 90(1) (Am. L. Inst. 1981)).

Defendants contend that Plaintiff failed to allege a specific promise Islander Resort made regarding unfettered access. (MTD. at 9.) The Court agrees. Plaintiff alleges that certain Defendants "represented . . . that they intended" to build a new unit in conformance

with the Mr. Argyros's storage needs, and "offered a prime location" to him if he would contract for and help build a new storage unit. (Compl. ¶ 24.) Plaintiff further alleges that the Defendants gave Mr. Argyros "discretion" over aspects of the new unit's construction, and that certain Defendants "had knowledge of" and "knew" of his requirements for the new unit project. (Compl. ¶¶ 24, 26, 27-28.) None of these allegations constitute a promise sufficient to state a claim for promissory estoppel and thus Count 3 must be dismissed.[4]

### D.     Count Four: Private Nuisance as Against All Defendants

A nuisance is a condition that unreasonably interferes with one's use and enjoyment of his property, causing significant harm. *Nolan v. Starlight Pines Homeowners Association*, 167 P.3d 1277, 1284 (Ariz. Ct. App. 2007). "Such harm must constitute more than slight inconvenience or petty annoyance. The law does not concern itself with trifles, and therefore there must be a real and appreciable invasion of the plaintiff's interests . . . ." *Id.* (quoting Restatement § 821F cmt. c).

Here, Plaintiff failed to allege that Defendants' actions caused any significant harm to Mr. Argyros's use and enjoyment of Unit MC106. Plaintiff alleges that Defendants ceased allowing Mr. Argyros: 1) unfettered use of the parking lot in front of Unit MC106 to launch and store his watercraft, 2) to park his vehicles in front of the unit in order to enter and exit with his watercraft, and 3) use of the boat launch services. (Compl. ¶¶ 38-39, 41.) Plaintiff further alleges Defendants designated the lot in front of Unit MC106 for parking by permit only and denied Mr. Argyros a permit, (Compl. ¶ 40.). The Court cannot infer from these facts alone that any of Defendants' alleged actions deprived Mr. Argyros of the use and enjoyment of Unit MC106. Nor is the interference unreasonable. *See Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 712 P.2d 914, 920 (1985) (nuisance claim must allege interference that is "substantial, intentional and unreasonable under the circumstances."). Notably, Plaintiff does not allege that Mr. Argyros could no

---

[4] While the Court cannot consider the M106 Lease because it is not central to Count 3, *see Marder*, 450 F.3d at 448, it notes that the M106 Lease would preclude Plaintiff's promissory estoppel claim because it is an express written contract on the same subject matter as the alleged promise. *Bowman v. Honeywell Int'l, Inc.*, 438 Fed. Appx. 613, 615 (9th Cir. 2011) ("Arizona law prohibits an action based on the promissory estoppel theory of liability if there is an express, written contract on the same subject matter.")

longer transport his watercraft into or out of Unit MC106's storage. These deficiencies warrant Count 4's dismissal.

### E.  Count Five: Tortious Interference with Contract as Against Islander Resort, Rick Holloway, Patrice Holloway, Ken Komick

Plaintiff alleges that Defendants Islander Resort, Rick Holloway, Patrice Holloway, and Ken Komick tortiously interfered with the M106 Lease. (Compl. ¶¶ 73–77.)

The elements of a tortious interference claim under Arizona law are: 1) the existence of a valid contractual relationship; 2) the defendant's knowledge of the relationship; 3) the defendant's intentional interference inducing or causing breach of the contract; 4) the impropriety of the defendant's interference; and 5) resulting damages. *MDY Industries, LLC v. Blizzard Entertainment*, 629 F.3d 928, 955 (9th Cir. 2010).

Here, Plaintiff's alleges a breach of the M106 Lease based on the lone allegation that Defendants' actions "caused a material breach of the contractual obligations under the lease." (Compl. ¶ 76.) However, Plaintiff does not identify the specific term that was breached. Such conclusory allegations are insufficient to state a claim. *Ashcroft*, 556 U.S. at 662.

Plaintiff's Response argues that Defendants breached the M106 Lease term "the premises included a garage." (Resp. at 8.) Plaintiff did not raise this allegation in the Complaint and thus the Court will not consider it. Regardless, Plaintiff does not contend that the premises did not include a garage or any other facts illustrating the provision's relevance to the issue of breach.

Therefore, Count 5 is dismissed for failure to state a claim.

### F.  Counts Six and Seven: Civil Conspiracy and Aiding and Abetting as Against All Defendants

Likewise, Counts 6 and 7 for civil conspiracy and aiding and abetting are dismissed. "Both aiding and abetting and conspiracy require, as an essential element, the commission of a tort." *Caruthers v. Underhill*, 287 P.3d 807, 820 ¶ 54 (Ariz. Ct. App. 2012) (citing cases). "In Arizona, both civil conspiracy and aiding and abetting are derivative torts for

which a plaintiff may recover only if he has adequately pled an independent primary tort." *AGA Shareholders, LLC v. CSK Auto, Inc.*, 589 F. Supp. 2d 1175, 1191–92 (D. Ariz. 2008).

Because the Court will dismiss all of Plaintiff's tort claims, Plaintiff cannot allege the commission of an underlying tort. Accordingly, the Court must also dismiss Counts 6 and 7.

### G.    Count Eight: Unjust Enrichment as Against Island Storage

In Count 8, Plaintiff alleges that Defendant Island Storage will be unjustly enriched if it succeeds in its interference with Plaintiff's use of Unit MC106 or in its efforts to remove Plaintiff from Unit MC106. (Compl. ¶ 87). Defendant argues that the MC106 Lease governs improvements to the unit and thus precludes Plaintiff's unjust enrichment claim. (MTD. at 13-14.)

Under Arizona law, "[u]njust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Loiselle v. Cosas Mgmt. Group, LLC*, 228 P.3d 943, 946 (Ariz. Ct. App. 2010). To plead an unjust enrichment claim, a party must allege: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) the absence of justification for the enrichment and the impoverishment, and (5) the absence of a remedy provided at law." *Span v. Maricopa County Treasurer*, 437 P.3d 881, 886 ¶ 15 (Ariz. Ct. App. 2019).

In many cases, "the existence of a contract specifically governing the rights and obligations of each party precludes recovery for unjust enrichment." *USLife v. Gutkin*, 732 P.2d 579, 584 (Ariz. Ct. App. 1986). However, "[a] theory of unjust enrichment is unavailable only to a plaintiff if that plaintiff has already *received* the benefit of her contractual bargain." *Adelman v. Christy*, 90 F. Supp.2d 1034, 1045 (D. Ariz. 2000); *see also Gutkin*, 732 P.2d at 585 (noting that plaintiffs who fail to obtain the benefit of their bargain are "free to pursue a claim for unjust enrichment"). Thus, a claim of unjust enrichment may be pled in the alternative, but—consonant with the fifth element of the claim—the doctrine will have "no application" where a valid contract between the parties is ultimately found,  *Brooks v. Valley National Bank*, 548 P.2d 1166, 1171 (Ariz. 1976),

because there will then exist a "remedy provided at law," *Span*, 437 P.3d at 886 ¶ 15, for breach of contract.

Here, the Court cannot consider the MC106 Lease as a basis for dismissal because it is not central to Plaintiff's claim. And in any event, Plaintiff's Complaint fails to allege an absence of a remedy provided at law and thus the Court shall dismiss Count 8.

### H.     Plaintiff's Failure to Allege Specific Facts as to Each Defendant

Finally, Defendants point to two general issues with Plaintiff's Complaint. First, Plaintiff fails to allege specific facts about Patrice Holloway or Ken Komick and thus fails to state a claim against them. (MTD. at 5–6.). In response, Plaintiff points to its allegations that Ms. Holloway and Mr. Komick are partial owners of the Islander Defendants and they aided and abetted the underlying tort claims. (Resp. at 4-5.) These allegations are insufficient to state a claim. Notably, Plaintiff does not allege how Ms. Holloway and Ms. Komick aided and abetted the other Defendants' tortious conduct. Their partial ownership, without more, does not confer liability for aiding and abetting.

Defendants also argue that Plaintiff inappropriately combines Defendants Island Storage and Islander Resort as the "Islander Defendants" across most claims. Plaintiff responds that such combination is proper because the two entities have the same ownership and work closely together. (Resp. at 4-5.) The Court disagrees. Plaintiff's rental agreements are only with Island Storage. This alone warrants that Plaintiff allege specific allegations as to each Defendant individually.

### I.     Leave to Amend

In the alternative, Plaintiff requests leave to amend the Complaint. (Resp. at 9–10.) Fed. R. Civ. P. 15 provides that leave to amend should be freely granted "when justice so requires," and the Ninth Circuit has held that if a defective complaint can be cured, the plaintiff is entitled to amend the complaint before the action is dismissed. Fed. R. Civ. P. 15(a)(2); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). "The power to grant leave to amend, however, is entrusted to the discretion of the district court, which 'determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad

faith, undue delay, prejudice to the opposing party, and/or futility.'" *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quoting *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009)).

This is Plaintiff's first request to amend. Justice requires that the Court provide her an opportunity to attach the proper exhibits and allege sufficient facts to state a claim. The Court's Order identifies and explains the Complaint's deficiencies. Accordingly, if Plaintiff files an amended complaint with the same deficiencies and some or all of the claims are dismissed, Plaintiff may face sanctions under Fed. R. Civ. P. 11 as well as responsibility for Defendants' attorney's fees.

**IT IS THEREFORE ORDERED** granting Defendants' Motion to Dismiss (Doc. 26). All Counts are dismissed without prejudice.

**IT IS FURTHER ORDERED** granting Plaintiffs' request for leave to Amend his Complaint (Doc. 26). Plaintiff shall have 21 days from the date of this Order to file an Amended Complaint that complies with this Court's Order.

Dated this 27th day of September, 2021.

Honorable John J. Tuchi
United States District Judge